IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BUD JAY SAWYER, JR., | § | |
| TDCJ #660018, | § | |
| | § | |
| Petitioner, | § | |
| v. | § | CIVIL ACTION NO. H-10-1087 |
| | § | |
| RICK THALER, Director, | § | |
| Texas Department of Criminal Justice - | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER

Bud Jay Sawyer, Jr. (TDCJ #660018) is a state inmate incarcerated in the Texas

Department of Criminal Justice – Correctional Institutions Division (collectively,

"TDCJ").  Sawyer has filed a federal petition for a writ of habeas corpus under 28

U.S.C. § 2254 to challenge a state court felony conviction.  He has included a

memorandum in support of his petition.  The respondent has answered with a motion to

dismiss (Docket No. 8), arguing that the petition is barred by the governing one-year

statute of limitations found in 28 U.S.C. § 2244(d).  Sawyer has filed a reply.  (Docket

No. 9).  After considering all of the pleadings, the state court records, and the applicable

law, the Court grants the respondent's motion and dismisses this case for reasons that

follow.

## I.      BACKGROUND

A local grand jury returned an indictment against Sawyer in cause number 669131,

charging him with capital murder.  At trial, the state presented evidence that Sawyer shot

and killed two men during a drug deal.  Sawyer testified that he acted in self-defense.  On September 23, 1993, a jury in the 184th District Court of Harris County, Texas, found Sawyer guilty as charged.  Because the state did not seek the death penalty, the trial court automatically sentenced Sawyer to life imprisonment.

On direct appeal, Sawyer complained that the prosecutor made improper statements during closing argument.  The intermediate court of appeals rejected all of Sawyer's issues and affirmed the conviction, based on the following summary of the facts presented at trial:

> On the evening of November 16, 1992, Lee Rayford was driving south of Parker Street in Houston, Texas.  Rayford was a street dealer of crack cocaine.  Sometime between 10:00 and 10:30 p.m., Rayford offered a ride to Eric Williams, who was walking along the side of the street.  Williams got in the car with Rayford and a woman named Dee Dee.  As the three neared the intersection of Parker and Shady Lane, Rayford saw [Sawyer] standing at a pay phone outside the Happyland convenience store.  Rayford parked behind [Sawyer]'s truck.  Rayford got out of his truck and sold [Sawyer] a rock of cocaine in exchange for $20 in food stamps.  Afterwards, Rayford dropped Williams at the Park Square Apartments.

> Around midnight, Williams was walking to his mother's house when Rayford again offered him a ride.  Williams got into the back seat of the car.  Rayford was driving, and George Smith was riding in the front passenger's seat.  As the three men were driving, Rayford again saw [Sawyer]'s truck.  Rayford flashed his lights to get [Sawyer]'s attention and stopped near [Sawyer]'s truck.

> [Sawyer] asked Rayford if he had more drugs.  Rayford replied that he did and asked if [Sawyer] had any money.  [Sawyer] said that he had $20 and then got out of his truck.  Williams testified that when he got out of his truck, [Sawyer] had a gun in his hands.  [Sawyer] walked over to Rayford's car and leaned inside the passenger's side window.  In a threatening tone, [Sawyer] told Rayford he wanted more cocaine for his money than he had received the last time.  Williams testified that [Sawyer] was clearly under

2

the influence of cocaine:  his eyes were glazed and bloodshot, his body was shaking slightly, and he obviously craved more cocaine.

After Rayford and [Sawyer] argued for two or three minutes, [Sawyer] said that he was going to kill all three occupants of the car. [Sawyer] then shot Smith twice in the chest, shot Rayford twice, and shot Williams once below his right hip.  Rayford and Smith died.  Williams survived and testified at trial.  [Sawyer] testified that he acted in self-defense.

*Sawyer v. State*, 877 S.W.2d 883, 884 (Tex. App. — Houston [14th Dist. June 9, 1994).

Thereafter, the Texas Court of Criminal Appeals refused Sawyer's petition for review on January 25, 1995.

In a habeas corpus petition filed on March 15, 2010,[1] Sawyer now seeks relief from his 1993 conviction under 28 U.S.C. § 2254 on the sole ground that he is actually innocent.  Sawyer does not dispute that he killed two men and shot a third during the course of a drug deal.  Instead, Sawyer claims that he has new evidence to support his theory of "self defense."  In support of this claim, Sawyer presents a written statement and an affidavit from a witness, identified as Sidney C. Richardson, who did not testify at trial.  In the affidavit, Richardson stated that he happened upon the crime scene after the shooting occurred and observed that one of the victims (Eric Williams) had a pistol in his

---

[1]     The Clerk's Office received the petition on March 16, 2010, but it is dated March 15, 2010, indicating that the petitioner placed his pleadings in the prison mail system on that date.  For statute of limitations purposes, courts in the Fifth Circuit treat the date a *pro se* prisoner deposits a federal habeas corpus petition in the mail as the filing date.  *See Fisher v. Johnson*, 174 F.3d 710, 712 n.8 (5th Cir. 1999) (citing *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998) (per curiam)).

possession.  The written statement is dated June 22, 1995.  The affidavit, which contains more detail, is dated September 16, 1996.

Sawyer's claim of actual innocence was examined at length during his second state habeas proceeding, which was initiated in 1996.[2]  In that proceeding, Richardson testified during an evidentiary hearing that he observed one of the victims (Williams) in possession of a small caliber pistol after the shooting occurred.  The state habeas corpus court found that Richardson was credible and that the newly discovered evidence created "a doubt as to the efficacy of the verdict which undermines confidence in the verdict and it is probable that the verdict would be different on retrial." The Texas Court of Criminal Appeals rejected the state habeas corpus court's findings and dismissed Sawyer's application as an a abuse of the writ on December 18, 1997. *See Ex parte Sawyer*, No. 29,766-02 (Tex. Crim. App.).

The respondent notes that more than twelve years have passed since the Texas Court of Criminal Appeals rejected Sawyer's claim.  Citing Sawyer's failure to pursue his claim with the requisite diligence on federal habeas corpus review, the respondent maintains that the petition must be dismissed as untimely under the governing one-year

---

[2]   The state court records were scanned electronically in no designated order.  (Docket Entry No. 7) These records include pleadings and transcripts from Sawyer's trial (except for portions of volume 6, pages 1-152, which appear to be missing), some records from his appeal, and his second state habeas corpus proceeding, *Ex parte Sawyer*, No. 29,766-02.  The records do not include Sawyer's first state habeas corpus application. *Ex parte Sawyer*, No. 29,766-01.  If those records were filed, they cannot be located.

statute of limitations found in 28 U.S.C. § 2244(d).   The  parties' contentions are discussed further below.

## II.    THE ONE-YEAR STATUTE OF LIMITATIONS

According to the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), all federal habeas corpus petitions filed after April 24, 1996, are subject to a one-year limitations period found in 28 U.S.C. § 2244(d).  Because the pending petition was filed well after April 24, 1996, the one-year limitations period clearly applies.  *See Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  Where a state court conviction is at issue, the statute of limitations for federal habeas corpus review began to run pursuant to 28 U.S.C. § 2244(d)(1)(A), at "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."

As noted above, Sawyer was convicted and sentenced to life imprisonment pursuant to a state court judgment that was entered against him in 1993.  That conviction became final in 1995.  Habeas petitioners whose convictions became final before the AEDPA's effective date on April 24, 1996, were afforded a one-year grace period to file their claims for relief in federal court.  *See United States v. Flores*, 135 F.3d 1000, 1004 (5th Cir. 1998) (discussing a habeas corpus application filed under 28 U.S.C. § 2255).  Therefore, Sawyer had until April 24, 1997, to file his federal writ.  *See Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (citing *Flanagan*, 154 F.3d at 201-02).

Sawyer's pending petition, dated March 15, 2010, is late by more than a decade and is therefore time-barred unless an exception applies.

### A.   Statutory Tolling

Under 28 U.S.C. § 2244(d)(2), the time during which a "properly filed" application for state habeas corpus or other collateral review is pending shall not be counted toward the limitations period. *See Artuz v. Bennett*, 531 U.S. 4 (2000). Sawyer reportedly filed an initial state habeas corpus application on August 8, 1995, which the Texas Court of Criminal Appeals denied on January 24, 1996.[3] *See Ex parte Sawyer*, No. 29,766-01. Because this application was adjudicated before the statute of limitations began to run on April 24, 1996, when the AEDPA was enacted, this proceeding does not have any tolling effect under § 2244(d)(2).

On October 28, 1996, Sawyer filed a second application for a state writ of habeas corpus. In that petition, which was filed with the assistance two local criminal defense attorneys (Dick DeGuerin and Matt Hennessy), Sawyer presented the above-referenced new evidence from Sydney Richardson, who testified that he saw one of the victims with a gun before the shooting occurred. On December 18, 1997, the Texas Court of Criminal Appeals dismissed the application under Article 11.07, § 4(a)-(c) of the Texas Code of

---

[3]   The respondent notes that Sawyer filed a previous writ application, which was summarily dismissed by the trial court. It appears that this writ application, which is not in the record, was never docketed or properly filed. Sawyer then filed a proper state writ application on August 8, 1995, which the Texas Court of Criminal Appeals denied on January 24, 1996. *See Ex parte Sawyer*, No. 29,766-01. This writ application is also not in the record.

Criminal Procedure, as an abuse of the writ.   This application tolled the statute of limitations for 424 days, extending the deadline to seek federal habeas review until February 15, 1999.   Even with tolling, Sawyer's pending federal habeas corpus application, which is dated March 15, 2010, remains late by more than eleven years.

Sawyer presents no other basis for statutory tolling and the record does not disclose any.   In that regard, Sawyer has not alleged that he was subject to state action that impeded him from filing his petition in a timely manner.   *See* 28 U.S.C. § 2244(d)(1)(B). Further, there is no showing of a newly recognized constitutional right upon which the petition is based; nor is there a factual predicate for the claims that could not have been discovered previously if the petitioner had acted with due diligence.   *See* 28 U.S.C. § 2244(d)(1)(C), (D). Accordingly, there is no statutory basis to save the petitioner's late-filed claims.

## B.      Equitable Tolling

In his response to the summary judgment motion, Sawyer acknowledges that his petition is untimely and he asks for equitable tolling.   Equitable tolling is an extraordinary remedy which is sparingly applied.   *See Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990).   The Fifth Circuit has held that the statute of limitation found in the AEDPA may be equitably tolled, at the district court's discretion, only "in rare and exceptional circumstances." *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998).   In that respect, the Fifth Circuit has limited the doctrine of equitable tolling to apply "principally where the plaintiff is actively misled by the defendant about the cause of action or is

7

prevented in some extraordinary way from asserting his rights." *Melancon v. Kaylo*, 259 F.3d 401, 407 (5th Cir. 2001) (quotation omitted).

The habeas petitioner bears the burden of establishing that equitable tolling is warranted. *See Howland v. Quarterman*, 507 F.3d 840, 845 (5th Cir. 2007) (citing *Alexander v. Cockrell*, 294 F.3d 626, 269 (5th Cir. 2002)). The Supreme Court has held that a "'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing.'" *See Holland v. Florida*, — U.S. —, 130 S. Ct. 2549, 2562 (2010)) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Sawyer meets neither of these criteria here for reasons discussed further below.

### 1.    *Due Diligence*

The chronology of Sawyer's state court proceedings documents extensive delay between the time that he became aware of his claim in June of 1995, and the date that he executed the pending federal habeas corpus petition on March 15, 2010. As noted above, Sawyer presented that claim to the state courts in his third state habeas application, which the Texas Court of Criminal Appeals dismissed as an abuse of the writ on December 18, 1997. Because his state habeas application tolled the statute of limitations on federal review, Sawyer could have presented his claims in federal court by filing a petition on or before the extended limitations period, which expired on February 15, 1999. Sawyer did not do so and he offers no explanation for his decision to wait more than twelve years, until March 15, 2010, to seek federal habeas review. It is well established in this circuit

that equitable tolling is not available where, as here, the petitioner squanders his federal limitations period. *See, e.g., Ott v. Johnson*, 192 F.3d 510, 514 (5th Cir. 1999).

### 2. *Extraordinary Circumstances*

Sawyer insists that he is entitled to equitable tolling, pointing to the newly discovered evidence from Sydney Richardson as proof that he is actually innocent. The Court notes that, although Sawyer maintains that this evidence demonstrates his actual innocence, Richardson's testimony does not show Sawyer to be innocent. Nor does it establish that he shot the three victims in self defense. In that respect, Richardson testified on state habeas review that he observed the victims after Sawyer had already shot them and that one of them (Eric Williams) had a small pistol. Assuming that this is true, however, the evidence still shows that Sawyer shot and killed two other men (Lee Rayford and George Smith), who were unarmed. Thus, Richardson's testimony establishes, at most, a credibility issue for the jury, which rejected Sawyer's claim of self-defense at trial.

The state habeas corpus court, which presided over the evidentiary hearing, but not the trial proceeding, found that Richardson was credible and recommended granting a new trial. After considering the entire record, however, the Texas Court of Criminal Appeals rejected all of the state habeas corpus court's findings and Sawyer's claim of actual innocence. In doing so, the Court of Criminal Appeals concluded that Sawyer's application was successive and therefore barred because he did not meet the criteria for review or relief set out in the Texas abuse-of-the writ statute. *See* TEX. CRIM. APP. P. art.

11.07 § 4(a).  By dismissing the application under Article 11.07, § 4(a), the Court of Criminal Appeals implicitly found that Sawyer failed to show that (1) "the current claims have not been and could not have been presented previously in an original or in a previously considered application because the factual or legal basis for the claims were unavailable . . . ;" or (2) by a preponderance of the evidence, but for a violation of the United States Constitution, no rational juror could have found the applicant guilty beyond a reasonable doubt."  TEX. CODE CRIM. PROC. art. 11.07, § 4(a).  A state court's findings of fact are presumed to be correct on federal habeas review, and the petitioner has the burden of rebutting the presumption of correctness by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  This presumption extends not only to express findings of fact, but to the implicit findings of the state court as well.  *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citations omitted).

Sawyer makes no effort to overcome the implicit finding made by the Court of Criminal Appeals that Richardson lacked credibility and that his testimony did not qualify as new evidence of actual innocence.  A review of the evidentiary hearing, which shows that Richardson's testimony was refuted by the testimony of an eye-witness, supports that conclusion.  The pertinent testimony is summarized below.

Richardson testified at the evidentiary hearing that, shortly after midnight on November 17, 1992, he left home with his brother-in-law to get a pack of cigarettes from

a local convenience store.[4]  *See Habeas Court Reporter's Record*, vol. 3, at 15-16.  An

hour later, at approximately 1:22 or 1:25 a.m., Richardson heard "four or five gunshots."

*Id.* at 17.  As Richardson turned the corner, he saw a small car parked in the street.  *Id.*

Richardson approached the small car and got out of his own vehicle to "see what was

going on."  *Id.*  Richardson saw two black males (Eric Williams and Lee Rayford) leaving

the scene.  *Id.* at 19.  He testified that "one was like slumped over and the other one was

like helping him get across the little ditch that is there."  *Id.*  Richardson peered into the

passenger side of a car and saw a man "slumped over" toward the driver's seat.  *Id.* at 18-

19.  That man (George Smith) was deceased.  Richardson called out to the two men who

had stumbled from the car to the porch of a nearby apartment complex and asked "what

was going on."  *Id.* at 21.  One of the men was laying face down, while the other man

stood over him.  *Id.*  When Richardson approached the men, the man who was standing up

"swung around," cursed at Richardson, and then told Richardson to "[g]et the fuck out of

there."  *Id.* at 21, 22.  Richardson testified that this man had a small caliber pistol in his

hand and that he was pointing it at Richardson.  *Id.* at 21-22.  Richardson went back to his

vehicle, where his brother-in-law was waiting.  *Id.* at 22.

     Although the shooting happened in November of 1992, Richardson acknowledged

that he did not come forward until June of 1995, when he saw a "flier" that had been

posted at the convenience store, which asked for information about the incident.  *Id.* at 27.

---

[4]     Richardson noted that his brother-in-law, James Taylor, was deceased.  *See Habeas Court Reporter's Record*, vol. 3, at 18.

After speaking with Sawyer's mother,[5] Richardson made a written statement and eventually identified Eric Williams as the man who pointed the gun at him on November 17, 1992. *Id.* at 29-30.

Richardson disclosed that he had a criminal record and that he had used different aliases to avoid pending charges. *Id.* at 33-34. On cross-examination, Richardson acknowledged that he had multiple criminal convictions from out of state and in Texas. *See id.* at 35-38. Richardson also admitted that he did not tell anyone about the gruesome incident that he reportedly witnessed during the early morning hours of November 17, 1992, until after he saw the flier in June of 1995. *Id.* at 38-39.

Sawyer's counsel argued that, according to Richardson's testimony, Eric Williams had a gun on the night of the shooting. *See id.* at 81. Williams testified for the state at trial that neither he nor his friends had a gun that night. Sawyer's counsel argued, therefore, that Williams lied during his testimony. *See id.* at 82. Counsel argued further that Richardson's testimony was sufficient to support Sawyer's claim of self defense and to undermine any confidence in the jury's guilty verdict. *Id.* at 83.

In response to the argument by Sawyer's counsel, the state noted that Richardson contradicted the testimony given previously by Sawyer, who stated prior to and during

---

[5]     Sawyer's mother testified that she posted a flier asking for information about the shooting in which her son was involved. *See Habeas Court Reporter's Record*, vol. 3, at 67. The flier offered a $5,000 reward for information. *Id.* Sawyer's mother testified that Richardson had not received a reward or any payment for his statement. *Id.* at 68. She clarified that she had not paid the reward because her son's conviction had not been reversed. *Id.* at 69, 71.

trial that Rayford was the individual in possession of a gun, and not Williams.  *Id.* at 85.

Further, the prosecutor noted that Sawyer did not tell anyone that there was a gun in the

car, but only that it "looked like someone was coming up with a gun[.]" *Id.* at 86.

Assuming that Richardson's testimony was true, and that Williams did have a gun, the

evidence showed that Sawyer shot Smith and Rayford first, before shooting Williams.

Likewise, Williams was shot in the back of his hip while he was trying to get out of the

car to escape from Sawyer, which is inconsistent with a theory of self-defense.   The

prosecutor argued further that Richardson's story was not credible because it was not

believable that someone would come that close to witnessing a double homicide and not

tell anyone about it.  *Id*. at 92.

Eric Williams testified during the second portion of the state habeas evidentiary

hearing.[6]  *See Habeas Court Reporter's Record*, vol. 5, at 10.  Williams disclosed that he

had lengthy criminal record and that he was currently serving a thirty-year prison sentence

for car theft.  *Id.* at 11-12.  Williams testified that he was with his friend, Lee Rayford, on

November 17, 1992, when they encountered Bud Sawyer.  *Id.* at 22.  Williams admitted

---

[6]      The evidentiary hearing commenced with Richardson's testimony on December 16, 1996.
*See Habeas Court Reporter's Record*, vol. 3.  A recess was required because Williams
was in state custody of the Texas Department of Criminal Justice at a facility in Amarillo
and not immediately available to testify directly after Richardson.  After reconvening
briefly on December 23, 1996, the court reset the proceeding further because of the
Christmas holiday and to allow Williams to review his trial testimony with court-
appointed counsel in case he needed to invoke the privilege against self-incrimination.
*See Habeas Court Reporter's Record*, vol.  4.  Williams testified on January 2, 1997.  *See
Habeas Court Reporter's Record*, vol. 5.  The final witness testified on February 6, 1997,
and counsel for both Sawyer and the state had an additional opportunity to present
closing arguments. *See Habeas Court Reporter's Record*, vol. 6.

that he and Rayford and Smith were drug dealers who sold crack cocaine.  *Id.* at 27.

Williams testified that Sawyer had a gun in his hand when he approached the car that he

was riding in with Rayford and Smith.  *Id.* at 27-28.  Sawyer shot Smith first, then he shot

Rayford as he was trying to get out of the car, and then he shot Williams as he was trying

to get out of the car. *Id.* at 28-29.  Williams followed Rayford across the street, where

Rayford collapsed and died on the porch of an apartment building.  *Id.* at 30.  Williams

then ran into the apartment complex, where he tried to get into a friend's apartment.  *Id.* at

33.   Shortly thereafter, the police found Williams by the pool area of the apartment

complex.  *Id.*  Although Williams acknowledged that "everybody packed a gun" in that

neighborhood, he denied that he and his friends had a gun on the night of November 17,

2002. *Id.* at 38.

After Sawyer rested his case, the state presented testimony from a student who

witnessed the incident.  *See Habeas Court Reporter's Record*, vol. 6, at 7.  This witness,

Armando Bustamonte, testified that he heard a car horn during the early morning hours of

November 17, 2002, followed by male voices.  *Id.* at 8-9, 13.  Bustamonte heard voices

coming from a small car parked at the end of his driveway, which was across from the

entrance to an apartment complex.  *Id.* at 12-13.  Bustamonte observed a small pick-up

truck, which matched the one driven by Sawyer, sitting adjacent to the car.  *Id.* at 12.

Bustamonte heard one of the individuals say, "You screwed me over."  *Id.* at 9, 16.

Another voice said, "No, it's right here.  Here it is."  *Id.* at 16.  Bustamonte then heard five

gunshots in rapid order.  *Id.* From the window of his residence, Bustamonte observed a

black male cross a ditch between the road and the apartment complex across the street from his home. *Id.* Bustamonte also saw a second black man (Williams) come out of the car and limp across to the first man (Rayford), who had collapsed on the porch of the apartment complex. *Id.* at 17. The second man crouched down next to the first one for less than a minute before the second man fled into the apartment complex. *Id.* Bustamonte did not see anyone else approach the men. *Id.* After the second man left, Bustamonte called the police. *Id.* at 18.

The state habeas corpus court questioned Bustamonte carefully to determine whether he saw Richardson at the scene of the offense that night or whether, as Richardson claimed, Williams pointed a gun at him. Bustamonte stated that he had an unobstructed view of the apartment complex and that he did not see anyone else come close to the two black men who emerged from the small car that night. *Id.* at 37. Bustamonte repeated that he saw the second black man (Williams) lean over the collapsed man (Rayford) for less than a minute before the second man fled the scene. *Id*. When asked by the state court Bustamonte insisted that, while he observed the second man crouching over the first, he did not see the second man do anything with his hands or anything unusual. *Id*. at 38.

The testimony from Armando Bustamonte supports the testimony given by Williams. More importantly, Bustamonte's testimony squarely contradicts the proposed new testimony given by Richardson and refutes Sawyer's claim that Williams lied at trial. Moreover, the substance of the evidence presented by Sawyer is far from new. The

lengthy, unexplained delay between the time that Sawyer presented this evidence initially in 1995, and the date on his petition for federal habeas corpus review, executed on March 10, 2010, casts additional doubt on the validity of this evidence.  Based on this record, the Court is not persuaded that Sawyer meets the criteria for establishing new evidence of actual innocence under the applicable standard.[7]

There is no clear precedent in this circuit about whether actual innocence will equitably toll the statute of limitations on federal habeas corpus review.  Presumably, tolling would be available for such a claim under 28 U.S.C. § 2244(d)(1)(D), although this provision is of no benefit to Sawyer under the circumstances here.[8]  Because Sawyer has not shown himself to be actually innocent, he does not establish an excuse for his failure

---

[7]    To the extent that Sawyer raised the pending claim in a successive state habeas application, the Texas Court of Criminal Appeals dismissed this application as an abuse of the writ.  Thus, Sawyer's claim is subject to the doctrine of procedural default.  *See Fearance v. Scott*, 56 F.3d 633 (5th Cir. 1995).  Sawyer does not satisfy the exceptional criteria for overcoming the procedural bar.  *See Schlup v. Delo*, 513 U.S. 298, 327 (1995) (requiring a petitioner to demonstrate that it is more likely than not that no reasonable juror would have convicted him in light of the newly presented evidence).  Nor does Sawyer meet the "extraordinarily high" showing that he meets the standard of proof necessary to make a stand-alone claim of actual innocence.  *House v. Bell*, 547 U.S. 518, 554-55 (2006).  Because the petition is plainly barred by the governing statute of limitation, the Court does not address the merits further.

[8]    In his petition, Sawyer claims Sydney Richardson did not come forward to provide the above-referenced "new evidence" in support of Sawyer's theory of self defense until "June, 1995, 21 months after [Sawyer] was convicted[.]"  To the extent that Sawyer attempts to present new evidence in support of his theory of self-defense, he had one year from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of reasonable diligence."  28 U.S.C. § 2244(d)(1)(D).  The date that Sawyer became aware of this new evidence triggered the one-year statute of limitations on federal habeas corpus review, which expired in June of 1996.  Under this scenario, Sawyer's claim is still late by more than a decade.

16

to seek federal habeas corpus review in a timely fashion or show that exceptional circumstances warrant equitable tolling. *See Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000) (noting that claims of actual innocence are not a "rare and exceptional circumstance" which justifies equitable tolling of the statute of limitations given that many prisoners maintain they are actually innocent); *see also Prince v. Thaler*, 354 F. App'x 846 (5th Cir. 2009) (noting that "[t]here is no precedent in this circuit whether actual innocence may equitably toll the statute of limitations" and declining to address the issue further because the petitioner did not make a showing of actual innocence).

None of Sawyer's other allegations demonstrate an exceptional circumstance that meets the criteria for equitable tolling. Although Sawyer has represented himself in this federal habeas proceeding, the Fifth Circuit has held that a prisoner's *pro se* status does not excuse an untimely federal habeas corpus petition. *See Lookingbill v. Cockrell*, 293 F.3d 256, 264 n.13 (5th Cir. 2002); *see also United States v. Flores*, 981 F.2d 231, 236 (5th Cir. 1993) (holding that *pro se* status, illiteracy, deafness, and lack of legal training are not external factors excusing abuse of the writ). The petitioner's incarceration and ignorance of the law do not otherwise excuse his failure to file a timely petition and are not grounds for equitable tolling. *See Fisher v. Johnson,* 174 F.3d 710, 714 (5th Cir. 1999); *see also Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2003) (noting that a petitioner's ignorance or mistake is insufficient to warrant equitable tolling).

The Court is mindful of the effect a dismissal will have on the petitioner's ability to have his claims heard by a federal court. *See Felder*, 204 F.3d at 173. The Fifth Circuit

17

has counseled, however, that the doctrine of equitable tolling is applies, if at all,"restrictively," and "is entertained only in cases presenting 'rare and exceptional circumstances where it is necessary to preserve a [petitioner's] claims when strict application of the statute of limitations would be inequitable.'" *In re Wilson*, 442 F.3d 872, 875 (5th Cir. 2006) (quoting *Fierro v. Cockrell*, 294 F.3d 674, 682 (5th Cir. 2002) (internal quotation and alteration omitted)).   Given the length of delay and the petitioner's clear lack of diligence, the Court concludes that his circumstances are not among those "rare and exceptional" conditions which warrant deviation from the express rules that Congress has provided.   *See Felder*, 204 F.3d at 173.   Sawyer has not established that he is entitled to equitable tolling and, therefore, his petition must be dismissed as barred by the governing one-year limitations period.

## III.   CERTIFICATE OF APPEALABILITY

The habeas corpus petition filed in this case is governed by the AEDPA, codified at 28 U.S.C. § 2253, which requires a certificate of appealability to issue before an appeal may proceed.   *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability).   "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. §2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).   Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"   *Miller-El*, 537 U.S. at 336.   Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.   *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).   The statute of limitations on federal habeas corpus review has been the law for over fourteen years, since April of 1996.   This Court concludes that jurists of reason would not debate whether any procedural ruling in this case was correct or whether the petitioner states a valid claim.   Therefore, a certificate of appealability will not issue.

19

IV.    **CONCLUSION AND ORDER**

Based on the foregoing, the Court **ORDERS** as follows:

1.     The respondent's motion to dismiss (Docket No. 8) is **GRANTED**.

2.     The federal habeas corpus petition is **DISMISSED** with prejudice as barred

       by the statute of limitations.

3.     A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas this 28th day of December, 2010.

_____

Kenneth M. Hoyt
United States District Judge

20